1   WINTON LAW CORPORATION
    Steven W. Winton (State Bar No. 114425)
2      swwinton@wintonlawcorp.com
    11440 West Bernardo Court, Suite 214
3   San Diego, California 92127
    Telephone: (858) 385-0600
4   Facsimile: (858) 385-9389

5   BROWNE GEORGE ROSS LLP
    Peter W. Ross (State Bar No. 109741)
6      pross@bgrfirm.com
    Keith J. Wesley (State Bar No. 229276)
7      kwesley@bgrfirm.com
    2121 Avenue of the Stars, Suite 2400
8   Los Angeles, California 90067
    Telephone: (310) 274-7100
9   Facsimile: (310) 275-5697

10  LAW OFFICES OF GARY FREEDMAN
    Gary Freedman (State Bar No. 49922)
11  1149 Third Street, Suite 200
    Santa Monica, California 90403
12  Telephone: (310) 576-2444
    Facsimile: (310) 576-2440
13
    Attorneys for Defendant Brighton
14  Collectibles, LLC

15              UNITED STATES DISTRICT COURT

16              SOUTHERN DISTRICT OF CALIFORNIA

17
    SOPHIA & CHLOE, INC., a California     Case No. 12-CV-2472 AJB KSC
18  corporation,
                                           The Hon. Anthony J. Battaglia
19              Plaintiff,
                                           **DEFENDANT BRIGHTON**
20        vs.                              **COLLECTIBLES, LLC'S NOTICE**
                                           **OF MOTION FOR SUMMARY**
21  BRIGHTON COLLECTIBLES, LLC, a          **JUDGMENT, OR, IN THE**
    Delaware limited liability company,    **ALTERNATIVE, SUMMARY**
22                                         **ADJUDICATION; MEMORANDUM**
                Defendant.                 **OF POINTS AND AUTHORITIES**
23                                         **[REDACTED]**

24                                         [Declarations of Vicente Agor, Jerry
                                           Kohl, Dee Dee McGuire, Stephennie
25                                         Mulder, Valerie Randall, Keith J.
                                           Wesley and Robert Wunderlich filed
26                                         concurrently herewith]

27                                         Hearing Date: June 26, 2014
                                           Hearing Time: 2:00 p.m.
28                                         Hearing Location: Courtroom 3B

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2014, at 2:00 p.m., in Courtroom 3B of the above-entitled Court, located at 940 Front Street, San Diego, CA 92101-8900, before the Honorable Anthony J. Battaglia, defendant Brighton Collectibles, LLC ("Brighton"), will and hereby does move the Court for an Order granting summary judgment, or, in the alternative, summary adjudication, in favor of Brighton and against plaintiff Sophia & Chloe, Inc. ("Sophia & Chloe").

Brighton's motion, which is pursuant to Rule 56 of the Federal Rules of Civil Procedure, is based on the following grounds:

- Sophia & Chloe's copyright infringement claims fail as a matter of law because (a) there is no evidence that the Brighton designer who created the allegedly infringing jewelry designs had access to Sophia & Chloe's designs at issue; and (b) the Brighton jewelry designs are not substantially similar to any protectable expression in the Sophia & Chloe jewelry designs.

- Sophia & Chloe's trade dress infringement and unfair competition claims fail as a matter of law because (a) the claimed trade dress does not have a consistent, distinctive overall look and feel; (b) the claimed trade dress has not acquired distinctiveness – *i.e.*, "secondary meaning"; and (c) there is no likelihood of consumer confusion as to the source of the parties' respective jewelry designs.

- If the Court denies summary judgment as to any claim, then (a) summary adjudication should be granted on Sophia & Chloe's claim for actual damages because Sophia & Chloe has represented it is no longer pursuing that claim and there is no evidence of actual damages or a reasonable method of calculating actual damages; and (b) the number of potential statutory damage awards under the Copyright Act

should be limited to a maximum of three because there are a maximum of three "works" covered by Sophia & Chloe's copyright registrations.

This motion is supported by this Notice, the attached Memorandum of Points and Authorities, the Declarations of Vicente Agor, Jerry Kohl, Dee Dee McGuire, Stephennie Mulder, Valerie Randall, Keith J. Wesley and Robert Wunderlich, the exhibits thereto, the files, records, and pleadings already on file in this action, and any other evidence or argument that may be presented by Brighton at or before any hearing on this motion.

DATED: March 28, 2014   BROWNE GEORGE ROSS LLP
            Peter W. Ross
            Keith J. Wesley


           By  <u>s/ Peter W. Ross</u>
              Peter W. Ross
           Attorneys for Defendant Brighton Collectibles, LLC

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

1.    Introduction................................................................................................1

2.    Relevant Facts And Procedural History. ....................................................2

    A.    Sophia & Chloe And Its "Kiss" And "Buddha's Kiss" Jewelry. ...........2

        (1)    Sophia & Chloe. ...........................................................2

        (2)    The Sophia & Chloe Kiss Jewelry. ...............................2

        (3)    The Sophia & Chloe Buddha's Kiss Jewelry..................4

    B.    The Moroccan Or "Arabesque" Design Trend........................................4

    C.    Brighton And Its "Toledo" Jewelry........................................................6

        (1)    Brighton........................................................................6

        (2)    Brighton's Toledo Jewelry............................................6

    D.    This Case. ...............................................................................................7

        (1)    The alleged copyrights at issue. ....................................8

        (2)    The alleged trade dress at issue.....................................8

            (a)    The scope of the claimed trade dress.................8

            (b)    Use of the claimed trade dress in the marketplace. ...........9

3.    The Summary Judgment Standard................................................................9

4.    Summary Judgment Should Be Granted In Favor Of Brighton. ................9

    A.    Sophia & Chloe's Copyright Claims.......................................................9

        (1)    The elements of Sophia & Chloe's copyright claims. .................9

        (2)    There is no admissible evidence that the creator of the Brighton designs had access to the Sophia & Chloe designs. ..................................................................... 10

            (a)    No direct evidence of access...........................10

            (b)    No chain of events showing access. ...............10

            (c)    No widespread dissemination. .........................11

DEFENDANT BRIGHTON'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

(3) Brighton's designs are not substantially similar *in protectable expression* to Sophia & Chloe's designs. .............. 12

    (a) Unprotectable elements must be filtered out. ................. 12

    (b) The Brighton and Sophia & Chloe designs do not share substantially similar protectable expression .......... 13

        (i) Toledo Bangle (JB3562). ....................................... 13

        (ii) Toledo Earrings (JE4460). ................................... 14

        (iii) Toledo Necklace (JN5490). ................................ 14

        (iv) Toledo Necklace (JN5482). ................................ 15

        (v) Toledo Statement Earrings (JE4452). ................... 16

        (vi) Toledo Narrow Bangle (JB3570). ......................... 17

B. Trade Dress And Unfair Competition Claims. ...................................... 17

    (1) The law governing trade dress and unfair competition. ............. 17

    (2) The claimed trade dress does not have a consistent, distinctive overall look and feel. ................................ 18

    (3) The claimed trade dress has not acquired secondary meaning. ...................................................................... 20

    (4) Confusion as to the source of the parties' products is not likely amongst an appreciable number of consumers. ............... 23

5. In the Alternative, Summary Adjudication Should Be Granted In Favor Of Brighton On Certain Remedies. ............................................... 24

A. Sophia & Chloe's Claim For Actual Damages Should Be Summarily Adjudicated In Favor Of Brighton. .................................. 24

B. Sophia & Chloe Would Be Entitled To A Maximum Of Three Statutory Damage Awards. ............................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aaron Basha Corp. v. Felix B. Vollman, Inc.,*
88 F. Supp. 2d 226 (S.D.N.Y. 2000) ....................................................13

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979) ..............................................................23

*Art Attacks Ink, LLC v. MGA Entm't Inc.,*
581 F.3d 1138 (9th Cir. 2009) ..................................................... *passim*

*Cleary v. News Corp.,*
30 F.3d 1255 (9th Cir. 1994) ..............................................................18

*Continental Laboratory Products, Inc. v. Medax Int'l, Inc.,*
114 F. Supp. 2d 992 (S.D. Cal. 2000).............................................21, 22

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.,*
462 F.3d 1072 (9th Cir. 2006) ....................................................9, 10, 12

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,*
423 F.3d 539 (6th Cir. 2005) ..............................................................23

*Global Mfg. Group, LLC v. Gadget Universe.com,*
417 F. Supp. 2d 1161 (S.D. Cal. 2006)...........................................20, 21

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.,*
287 F.3d 866 (9th Cir. 2002) ..............................................................20

*Jorgensen v. Epic/Sony Records,*
351 F.3d 46 (2d. Cir. 2003)................................................................10

*Judith Ripka Designs, Ltd. v. Preville,*
935 F. Supp. 237 (S.D.N.Y. 1996) ......................................................13

*Levi Strauss & Co. v. Blue Bell, Inc.,*
778 F.2d 1352 (9th Cir. 1985) .......................................................20, 22

*Mattel, Inc. v. MGA Entm't, Inc.,*
616 F.3d 904 (9th Cir. 2010) .........................................................12, 13

*Regal Jewelry v. Kingsbridge Int'l, Inc.*,
    999 F. Supp. 477 (S.D.N.Y. 1998) ..................................................................22

*Rice v. Fox Broadcasting Co.*,
    330 F.3d 1170 (9th Cir. 2003) .......................................................................11

*Rose Art Indus., Inc. v. Swanson*,
    235 F.3d 165 (3d. Cir. 2000) .........................................................................18

*Sharper Image Corp. v. Target Corp.*,
    425 F. Supp. 2d 1056 (N.D. Cal. 2006) .........................................................21

*Wal-Mart Stores, Inc. v. Samara Bros.*,
    529 U.S. 205 (2000) ..............................................................................17, 20

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) .........................................................19

*Walt Disney Co. v. Powell*,
    897 F.2d 565 (D.C. Cir. 1990) ......................................................................25

*William S. Geiger Corp. v. Gigi Accessories, Inc.*,
    1997 WL 458668 (S.D.N.Y. Aug. 11, 1997).................................................12

**Federal Statutes**

15 U.S.C.
    §1125(a) ...........................................................................................................7

17 U.S.C.
    §504(c) ...........................................................................................................25

Federal Lanham Act
    §43(a) .............................................................................................................18

Federal Rules of Civil Procedure
    26....................................................................................................................24
    56(a) .................................................................................................................9

**State Statutes**

Cal. Business & Professions Code
    §17200...............................................................................................................7
    §17500...............................................................................................................7

DEFENDANT BRIGHTON'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

**Other Authorities**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (2014) ........................................................................ 18, 19, 22, 23

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    Introduction.

This is a copyright infringement, trade dress infringement, and unfair competition case. The parties are businesses in the fashion industry. The dispute centers on whether six jewelry designs in defendant Brighton's "Toledo" line infringe upon intellectual property rights plaintiff Sophia & Chloe claims it owns in its "Kiss" and "Buddha's Kiss" jewelry.

Summary judgment should be granted in favor of Brighton for the following reasons:

<u>First</u>, Sophia & Chloe's copyright infringement claims fail as a matter of law because (a) there is no evidence that the Brighton designer who created the allegedly infringing jewelry designs had access to Sophia & Chloe's jewelry designs; and (b) the Brighton jewelry designs are not substantially similar <u>to any protectable expression</u> in the Sophia & Chloe jewelry designs.

<u>Second</u>, Sophia & Chloe's trade dress infringement and unfair competition claims fail as a matter of law because (a) the claimed trade dress does not have a consistent, distinctive overall look and feel; (b) the claimed trade dress has not acquired distinctiveness – <i>i.e.</i>, "secondary meaning"; and (c) there is no likelihood of consumer confusion as to the source of the parties' respective jewelry designs.

In the alternative, if the Court denies summary judgment as to any claim, in whole or part, then the Court should summarily adjudicate certain damages claims in favor of Brighton. More specifically:

<u>First</u>, the Court should summarily adjudicate Sophia & Chloe's claim for actual damages because Sophia & Chloe has represented that it is no longer pursuing that claim, and there is no evidence of actual damages or a reasonable method of calculating actual damages.

<u>Second</u>, the number of potential statutory damage awards under the Copyright

1 | Act should be limited to a maximum of three because there are a maximum of three
2 | "works" covered by Sophia & Chloe's copyright registrations.

3 | For those reasons, as explained in detail below, Brighton respectfully
4 | requests summary judgment in its favor.

5 | **2.**     <u>**Relevant Facts And Procedural History.**</u>

6 |     A.     <u>**Sophia & Chloe And Its "Kiss" And "Buddha's Kiss" Jewelry.**</u>

7 |       **(1)**     <u>**Sophia & Chloe.**</u>

8 | Nathalie Sherman was born in Marrakesh, Morocco. (Doc. 1, Compl., ¶6.)
9 | She began designing jewelry in 1996, after the birth of her daughter Sophia. (*Id.*)
10 | In 1999, after the birth of her second daughter, she started calling her jewelry line
11 | "Sophia & Chloe". (*Id.*, ¶¶1, 6.)

12 | Besides Ms. Sherman, Sophia & Chloe has two full-time employees and two
13 | part-time employees. (Wesley Decl., Ex. 202, Ansolabahere Depo at 8:9-9:5, 10:6-
14 | 20.) Sophia & Chloe jewelry is sold in approximately 19 boutiques in California
15 | and in one or a small number of boutiques in each of 15 other states. (*Id.*, Exs. 18 &
16 | 200, Sherman Depo at 11:14-12:25.) From April 2007 to the present – *i.e.*, the
17 | period when Sophia & Chloe was selling the jewelry at issue – Sophia & Chloe's
18 | annual sales revenue has been between approximately ▬▬▬▬▬▬▬
19 | (Wunderlich Decl., Exs. 37-38.)

20 |       **(2)**     <u>**The Sophia & Chloe Kiss Jewelry.**</u>

21 | In 2006, Ms. Sherman decided to create a collection of "casted" – *i.e.*, melted
22 | metal – jewelry that was "all going to be symbolic." (Wesley Decl., Ex. 200,
23 | Sherman Depo at 37:11-38:25.) She wanted the design of her casted jewelry
24 | collection to be inspired by her Moroccan heritage and have a Moroccan theme.
25 | (Wesley Decl., Ex. 202, Ansolabahere Depo at 25:17-26:1; Compl., ¶¶10-11.)

26 | Ms. Sherman selected the bracket shape (or what she calls a "kiss" shape) –
27 | *i.e.*, { or } – as the core symbol of her collection. (Compl., ¶11; Wesley Decl., Ex.

28 |

200, Sherman Depo at 43:1-44:3 & Ex. 61.)  She did so in the year 2007.  (Wesley
Decl., Ex. 200, Sherman Depo at 195:12-196:14.)  She selected the bracket shape
because she liked it, she remembered that it was often used to "frame a henna
tattoo," and "[i]t was also a shape that was familiar to [her] based on [her] own
heritage, things [she] had seen with Moroccan motifs, textiles, and architecture."
(*Id.* at 41:21-42:5.)  Because the bracket shape was a common feature in Moroccan
art and architecture, Ms. Sherman believed she would honor her Moroccan heritage
by using that shape in her new jewelry collection.  (*Id.* at 44:11-16.)

     Nearly all of the pieces in what became Ms. Sherman's "Kiss collection"
incorporate a four-sided bracket frame (hereinafter "Bracket Frame") like the
designs below on the left and in the center.  (Wesley Decl., Ex. 1.)  One piece in the
Kiss collection connects seven brackets to form a circle (hereinafter "Multipointed
Medallion") as depicted on the right-hand side below. (*Id.*)

  

     Ms. Sherman did not create the bracket shape.  It has been and remains
common in design, art, and architecture.[1]  (*E.g.*, Wesley Decl., Exs. 30-31, 40, 135
& 200, Sherman Depo at 43:1-44:13; 153:24-154:7; Mulder Decl., Ex. 1, Report,
¶¶33-37 & Ex. B thereto; Agor Decl., ¶¶2-3 & Exs. 1-2; McGuire Decl., Ex. 1,
Report, ¶¶26-32, 38 & pp. 12, 26-29, 88, 115-20, 166, 189, 192-93.)  In fact, Ms.

---

[1] Indeed, the Court should take judicial notice that the bracket shape is on all
standard computer keyboards, right next to the letters and other basic building
blocks of our language.

DEFENDANT BRIGHTON'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Sherman says she came up with the idea of using the bracket or "kiss" shape through (a) pre-existing henna art that utilized that shape and (b) a book of symbols that referenced that shape. (Wesley Decl., Ex. 200, Sherman Depo at 192:24-201:24.)

Ms. Sherman did not create the Bracket Frame shape either. (Wesley Decl., Ex. 200, Sherman Depo at 53:16-54:2; 164:10-165:1.) It has been and remains common in design, art, and architecture as well. (Agor Decl., ¶¶2-3 & Exs. 1-2; Randall Decl., ¶¶9-12; Wesley Decl., Exs. 30, 133, 135 & 205, Maydahl Depo at 12:22-13:16, 37:18-38:24, 75:18-76:3, 77:10-17, 79:3-19; Mulder Decl., Ex. 1, Report, ¶¶33-37 & Ex. B thereto; McGuire Decl., Ex. 1, Report, ¶¶26-32, 38.) It is especially popular in digital graphic design and scrapbooking. (Randall Decl., ¶¶9-12; Wesley Decl., Ex. 202, Ansolabahere Depo at 31:10-23.) Indeed, a google search for the phrase "bracket frame" leads to dozens and dozens of third parties using the exact same Bracket Frame as Sophia & Chloe. (Wesley Decl., Ex. 30.)

Ms. Sherman did not create the Multipointed Medallion either. It too has been and remains common in art and design. (Wesley Decl., Ex. 200, Sherman Depo at 51:14-52:11; Mulder Decl., Ex. 1, Report, ¶37 & Ex. B thereto; McGuire Decl., Ex. 1, Report, pp. 151-55, 167, 169.)

### (3) The Sophia & Chloe Buddha's Kiss Jewelry.

In 2010, Ms. Sherman created a new set of teardrop-shaped earrings. (Wesley Decl., Exs. 52, 53.) They are comprised of several linked brackets as well. Their interior, open space forms what some would characterize as an outline of the rotund version of the deity Buddha; therefore, they are called "Buddha's Kiss." (*Id.* & Ex. 201, Sophia & Chloe Depo at 14:19-15:6.)

### B. The Moroccan Or "Arabesque" Design Trend.

Ms. Sherman is far from alone in applying Moroccan aesthetics to contemporary design. Before, while, and after Ms. Sherman was creating her Kiss

1    and Buddha's Kiss collections, many other designers – in jewelry, as well as in other
2    artistic genres – were also creating Moroccan-inspired fashion, art, and design.
3    (Wesley Decl., Exs. 135 & 200, Sherman Depo at 127:11-13; Mulder Decl., Ex. 1,
4    Report, ¶41; McGuire Decl., Ex. 1, Report, ¶¶26-32 & exhibits thereto.)  Naturally,
5    many of those designers too incorporated into their works variations of the kiss
6    shape and a combination of multiple connected kiss shapes.  (*Id.*; *see also* Wesley
7    Decl., Ex. 202, Ansolabahere Depo at 26:2-27:9.)  For example:

  

 

23   Of particular interest, the bracket designs from Vicente Agor's "Moroccan Garden"
24   collection depicted in the second row above and in Exhibits 1 and 2 of the Agor
25   Declaration mirror several Sophia & Chloe designs and <u>pre-date</u> Ms. Sherman's
26   creation of the Kiss line in 2007.  (Agor Decl., ¶¶2-3 & Exs. 1-2.)

DEFENDANT BRIGHTON'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

## C. Brighton And Its "Toledo" Jewelry.

### (1) Brighton.

Brighton designs, manufactures and sells women's fashion accessories, including, among other things, handbags, wallets, belts, watches, jewelry, and eyeglasses. Brighton has been in business since the 1970s. Brighton accessories are sold nationwide in over 5,000 specialty stores, as well as in over 160 Brighton-owned retail stores. Annual sales of Brighton products are in the hundreds of millions of dollars. (Kohl Decl., ¶¶2-3.)

Brighton is known for designing and selling ornate, silver, antique-finished jewelry, as well as accessories that incorporate that same style of jewelry and ornamentation. (Kohl Decl., ¶4.) All Brighton jewelry and ornamentation is designed from scratch – *i.e.*, via pencil sketches – by Brighton's in-house design team. (Kohl Decl., ¶5; Wesley Decl., Ex. 203, Cruser-Scott Depo at 32:15-33:21.) The approximately dozen full-time Brighton designers are all graduates of reputable design schools. They are all experienced. (Kohl Decl., ¶5.)

### (2) Brighton's Toledo Jewelry.

Kim Cruser-Scott has worked as a Brighton designer since 1999. (Wesley Decl., Ex. 203, Cruser-Scott Depo at 10:10-11, 14:22-16:15.) Unlike most Brighton designers, however, she lives outside of California and does not work at Brighton's headquarters. (*Id.* at 18:14-21:5.)

In late 2011, Ms. Cruser-Scott sketched several jewelry pieces – *i.e.*, earrings, necklaces, and bracelets – that were inspired by Spanish and Moorish culture and design. (*Id.* at 54:22-55:20, 57:10-68:2, 69:23-73:8 & Ex. 85.) At the time Ms. Cruser-Scott created her designs, she had never heard of Sophia & Chloe and had never seen any Sophia & Chloe jewelry. (Wesley Decl., Ex. 203, Cruser-Scott Depo at 115:23-116:7, 119:15-120:17.) In fact, the first time Ms. Cruser-Scott discovered Sophia & Chloe was after it brought this lawsuit. (*Id.*)

Ms. Cruser-Scott's jewelry designs became Brighton's "Toledo" collection. (*Id.* at 54:22-24, 68:3-69:22.) Brighton began selling that collection publicly in approximately August 2012. (Compl., ¶23.) Examples of three of the six allegedly infringing Toledo jewelry designs are below. All six are identified and depicted in Exhibit 2 to the Wesley Declaration.[2]

 

The pictures above show, <u>and the actual jewelry pieces make even more clear,</u> that the Sophia & Chloe jewelry is similar to the Brighton jewelry only in the same way as the Empire State Building and Sears Tower are similar (they are both tall, steel buildings) or that Michelangelo's David and the ancient Greek sculpture of the Discus Thrower are similar (they are both sculptures of athletic men). In other words, the Brighton and Sophia & Chloe jewelry share the same idea (metallic, Moroccan-inspired jewelry featuring bracket or bracket-like shapes), but they express that idea differently.

**D.** **This Case.**

Sophia & Chloe sued Brighton on October 11, 2012. (Doc. 1.) It pled the following claims: (1) copyright infringement, (2) trade dress infringement under 15 U.S.C. §1125(a), (3) unfair competition under California common law, and (4) unfair competition under Cal. Business & Professions Code §§17200 & 17500. (*Id.*)

---

[2]  Not every piece in Ms. Cruser-Scott's Toledo collection is claimed to infringe. For example, there are several handbags, a belt, a key fob, and earrings that are part of the Toledo collection, but are not alleged to infringe. (*Compare* Wesley Decl., Ex. 2, with *id.*, Ex. 87; *see also* Ex. 203, Cruser-Scott Depo at 74:19-75:24.)

**(1)**     <u>The alleged copyrights at issue.</u>

Sophia & Chloe claims infringement of 13 alleged copyrights. (Compl., ¶15 & Ex. A.) As the registrations for those alleged copyrights show, however, a single Sophia & Chloe jewelry design can correspond to multiple registrations.[3] (*Id.*; *see also* Wesley Decl., Exs. 1, 3-15 & 200, Sherman Depo at 143:25-144:9.) Therefore, at most, there are actually a total of three "works" that can be categorized as follows. <u>First</u>, Category 1 consists of Sophia & Chloe designs that feature the four-sided Bracket Frame described *supra* (hereinafter referenced as the "Kiss Designs"). The 10 registration numbers that are included in this category are the following: 1-700-833, 1-703-158, 1-703-177, 1-703-183, 1-700-838, 1-700-840, 1-703-185, 1-703-191, 1-703-200, and 1-703-188. <u>Second</u>, Category 2 consists of the two "Buddha's Kiss" tear-drop shaped earrings (hereinafter the "Buddha's Kiss Designs"). The registrations that correspond to this group are 1-048-713 and 1-068-177. <u>Third</u>, Category 3 consists of the circular bangle formed by linking seven "kiss" shapes (hereinafter the "Kiss Bangle Design"). The corresponding registration for that bangle is 1-703-189. (Wesley Decl., Ex. 1.)

**(2)**     <u>The alleged trade dress at issue.</u>

**(a)**     <u>The scope of the claimed trade dress.</u>

Although Sophia & Chloe applied to register a total of 13 versions of its Kiss Designs, Buddha's Kiss Designs, and Kiss Bangle Design, Sophia & Chloe actually sells no less than 64 different designs in the "Kiss" and "Buddha's Kiss" lines. (Wesley Decl., Ex. 59.) According to Sophia & Chloe, each and every one of those 64 designs – from bracelets to tear-drop shaped earrings to Bracket Frame necklaces and earrings – shares the same consistent, distinctive overall look and feel – *i.e.*, a

---

[3]    For example, with the exception of the color of the jewels, registration number 1-700-833, entitled "Kiss Earrings with Mermaid Quartz," applies to the same exact design as registration number 1-703-158, entitled "Kiss Earrings with Rose Quartz." (*Compare* Wesley Decl., Ex. 3 *with id.*, Ex. 4.)

"trade dress." (*Id.* & Ex. 200, Sherman Depo at 212:22-217:8.)

        **(b)**   **Use of the claimed trade dress in the marketplace.**

Sophia & Chloe sold less than ██████ units per year of all products bearing the claimed trade dress, for a total of a little over ██████ units. (Wunderlich Decl., ¶3.) In fact, only about ██ percent of units sold by Sophia & Chloe incorporate the claimed trade dress. (*Id.*) Moreover, numerous third parties sell Moroccan-inspired jewelry incorporating the kiss shape in particular, and even in some of the same arrangements as Sophia & Chloe. (Wesley Decl., Exs. 135 & 202, Ansolabahere Depo at 26:2-27:9; Agor Decl., Exs. 1-2; McGuire Decl., Ex. 1, Report at Ex. C.) Nevertheless, Sophia & Chloe claims that a substantial percentage of consumers see the design of its jewelry and, on that basis alone, recognize it as coming from only one source.

**3.**    **The Summary Judgment Standard.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**4.**    **Summary Judgment Should Be Granted In Favor Of Brighton.**

    **A.**    **Sophia & Chloe's Copyright Claims.**

        **(1)**   **The elements of Sophia & Chloe's copyright claims.**

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006), quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). For purposes of this motion, only element two – *i.e.*, copying of original, constituent elements – is at issue. As to element two, "[a]bsent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are

'substantially similar.'" *Id.*

**(2)** **There is no admissible evidence that the creator of the Brighton designs had access to the Sophia & Chloe designs.**

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.* Circumstantial evidence of access, however, must be "substantial, affirmative and probative." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 52-53 (2d. Cir. 2003).

Here, there is no direct evidence of access, there is no evidence establishing a chain of events linking the Sophia & Chloe designs to the creation of the Brighton designs, and the undisputed evidence proves that the Sophia & Chloe designs were not "widely disseminated."

**(a)** **No direct evidence of access.**

Sophia & Chloe has no direct evidence of access – *e.g.*, testimony or documentary evidence showing that Ms. Cruser-Scott had seen the Sophia & Chloe designs prior to creating her designs. In fact, as described *supra*, the only evidence is directly to the contrary. (Wesley Decl., Ex. 203, Cruser-Scott Depo at 115:23-116:7, 119:15-120:17.)

**(b)** **No chain of events showing access.**

There is also no circumstantial evidence of a chain of events linking the Sophia & Chloe designs to the creation of the Brighton designs. (*Id.*)

As Sophia & Chloe will no doubt emphasize, there is evidence that Brighton's President, Jerry Kohl, was on Sophia & Chloe's e-mail list prior to the creation of

the Brighton designs. But Mr. Kohl has no recollection of whether he had seen the Sophia & Chloe designs at issue prior to this lawsuit. (Wesley Decl., Ex. 204, Kohl Depo at 6:24-7:9.) And Mr. Kohl testified that he does not recall ever mentioning the Sophia & Chloe designs to Ms. Cruser-Scott (or any other Brighton employee) prior to this lawsuit, and he had no input in the design of the Brighton designs at issue. (Id. at 7:15-22, 9:6-14, 16:24-19:12, 25:10-17, 27:16-28:25.) Therefore, there is zero evidence that Mr. Kohl conveyed knowledge of Sophia & Chloe's designs (assuming he had any, which he does not recall) to Ms. Cruser-Scott. And there is zero evidence that his putative knowledge of the Sophia & Chloe designs influenced in any way the creation of the Brighton designs. All evidence is to the contrary.

### (c)    No widespread dissemination.

This Court can and should conclude, as a matter of law, that the Sophia & Chloe designs were not widely disseminated. Ms. Cruser-Scott created the Toledo designs at issue in late 2011. From Sophia & Chloe's launch of its Kiss Designs in 2007 through 2011, Sophia & Chloe sold a total of ▓▓▓ units of those designs. (Wunderlich Decl., Ex. 2.) Moreover, from Sophia & Chloe's launch of its Buddha's Kiss Designs in 2010 through 2011, Sophia & Chloe sold a total of ▓▓ units of those designs.[4] (Id.) The Ninth Circuit has held, as a matter of law, that sales of a far greater magnitude than those made by Sophia & Chloe did not constitute "widespread dissemination." See, e.g., Art Attacks, 581 F.3d at 1144 (sale of 2,000 t-shirts per year was insufficient, as a matter of law, to show access); Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1178 (9th Cir. 2003) (19,000 copies of video over 13-year period is not widespread dissemination).

---

[4]    Nor were Sophia & Chloe's marketing efforts so extensive as to compensate for the low volume of sales. (Wesley Decl., Ex. 201, Sophia & Chloe Depo at 48:5-60:9, Ex. 202, Ansolabahere Depo at 11:3-17:24.) Indeed, Sophia & Chloe's financial statements show that the most it has spent on marketing in a year is ▓▓▓▓ (Wunderlich Decl., Exs. 37-38.)

DEFENDANT BRIGHTON'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

In sum, Sophia & Chloe's copyright claims fail as a matter of law because no reasonable juror could find that the creator of the Brighton designs had access to the Sophia & Chloe designs.

**(3)** **Brighton's designs are not substantially similar *in protectable expression* to Sophia & Chloe's designs.**

**(a)** **Unprotectable elements must be filtered out.**

The Ninth Circuit applies a "two-part 'extrinsic/intrinsic' test" to determine whether there is a substantial similarity between the expression in an allegedly infringing work and the protectable expression in a copyrighted work. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010). "At the initial 'extrinsic' stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable." *Id.* And "[w]hen the unprotectable elements are 'filtered' out, what's left is an author's particular expression of an idea, which most definitely *is* protectable." *Id.*

"At summary judgment, courts apply only the extrinsic test. . . ." *Funky Films*, 462 F.3d at 1077. "A plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Id.*

Courts have held that the following are not protectible and thus cannot be considered when comparing the parties' works in the "extrinsic" test:

- Ideas, scenes a faire (standard features) and unoriginal components, *Mattel*, 616 F.3d at 913;

- Common geometrical shapes like squares, rectangles, circles, or ellipses, *William S. Geiger Corp. v. Gigi Accessories, Inc.*, 1997 WL 458668, at *2 (S.D.N.Y. Aug. 11, 1997);

1    • "[F]unctional elements of . . . jewelry, such as the use of toggle bar and

2    ring closures and rondels which unscrew and attach to pearls," *Judith*

3    *Ripka Designs, Ltd. v. Preville*, 935 F. Supp. 237, 247 (S.D.N.Y. 1996);

4    • "Commonly used elements of jewelry designs," *id.* at 247.

5    Therefore, the Ninth Circuit has cautioned:

6    When works of art share an idea, they'll often be 'similar' in the
     layman's sense of the term. For example, the stuffed, cuddly dinosaurs
7    at issue in *Aliotti*, 831 F.2d at 901, were similar in that they were all
     stuffed, cuddly dinosaurs-but that's not the sort of similarity we look
8    for in copyright law. 'Substantial similarity' for copyright
     infringement requires a similarity of expression, not ideas. *See id.* The
9    key question always is: Are the works substantially similar beyond the
     fact that they depict the same idea?

10
     *Mattel*, 616 F.3d at 916-17, citing *Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir.
11
     1987); *see also Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F. Supp. 2d 226,
12
     232 (S.D.N.Y. 2000) (noting that "[a]t first glance, the Basha and Vollman baby
13
     shoe pendants appear similar", but granting summary judgment because "both
14
     express the same unprotectable concept of a baby shoe pendant adorned with
15
     precious metals, gemstones, and enamel").[5]
16
                    **(b)    The Brighton and Sophia & Chloe designs do not share**
17
                           **substantially similar protectable expression.**
18
           After the unprotectable elements of Sophia & Chloe's designs are filtered out,
19
     none of the Brighton works is substantially similar in expression to the Sophia &
20
     Chloe works.
21
                    **(i)    Toledo Bangle (JB3562).**
22
           The Toledo Bangle design, (Ex. 55), is not similar to any protectable
23
     expression in any Sophia & Chloe design. Indeed, the Toledo Bangle has a totally
24

25   ─────────────────
     [5]   Ensuring that a copyright is limited to protectable expression is particularly
26   important because a copyright grants the right to prohibit use of the copyrighted
     work <u>in any medium</u>. *Mattel*, 616 F.3d at 915 n.10.
27

28

different design than any Sophia & Chloe work. (Mulder Decl., Ex. 1, Report, ¶¶38-39.) Even Sophia & Chloe and its expert agree. (Wesley Decl., Ex. 202, Ansolabahere Depo at 31:24-32:4, Ex. 205, Maydahl Depo at 59:3-7.) The Toledo Bangle does not infringe on any Sophia & Chloe copyright.

### (ii) <u>Toledo Earrings (JE4460).</u>

The Toledo Earrings, (Ex. 50), do not use any protectable expression that is found in any Sophia & Chloe design at issue.

To be sure, the Toledo Earrings consist of four perpendicular shapes – *i.e.*, Ogee arches[6] – and the Kiss Designs consist of four perpendicular shapes – *i.e.*, brackets. The use of four perpendicular shapes, however, is very common. (*See, supra*, Section II.A.2 & II.B.) Indeed, the use of four perpendicular Ogee arches or brackets specifically is very common. (*Id.*) Sophia & Chloe does not own a monopoly on the idea of combining four perpendicular shapes, or even four perpendicular brackets or Ogee arches. And the expression of the idea of four perpendicular shapes in the Toledo Earrings is different from the expression of that idea in the Kiss Designs. For example, the texture, color, thickness, shape, and details in the designs are all different. Furthermore, many of the Kiss Designs contain hanging jewels that are not present in the Toledo Earrings. (Mulder Decl., Ex. 1, Report, ¶¶26-28, 33-36 & Ex. B thereto.)

The Toledo Earrings do not infringe on any Sophia & Chloe copyright, as again conceded by Sophia & Chloe's own expert. (*Id.*; Wesley Decl., Ex. 205, Maydahl Depo at 69:18-21.)

### (iii) <u>Toledo Necklace (JN5490).</u>

The first Toledo Necklace, (Ex. 49), does not use any protectable expression that is found in any Sophia & Chloe design at issue either.

---

[6] An ogee arch – *i.e.*, ∿ -- is more rounded than the bracket or "kiss" – *i.e.*, }. (Mulder Decl., Ex. 1, Report, ¶¶19, 33-34.)

12-CV-2472 AJB KSC

It is true that the interior piece in the first Toledo Necklace is a shape comprised of four perpendicular Ogee arches, just as the Kiss Designs are comprised of shapes that consist of four perpendicular brackets. However, that is not a similarity in protectable expression because four linked Ogee arches and the Bracket Frame are common symbols. (*See, supra*, Section II.A.2 & II.B.) And the exterior piece of the first Toledo Necklace is different from anything in the Kiss Designs. The exterior piece of the first Toledo Necklace consists of four lotus petals, which are not present in any of the Kiss Designs. The remaining expression in the first Toledo Necklace – *e.g.*, the etchings, lines, color, texture, etc. – is different from the expression in the Kiss Designs. (Mulder Decl., Ex. 1, Report, ¶¶23-25, 33-36 & Ex. B thereto.)

The first Toledo Necklace does not infringe upon any Sophia & Chloe copyright.

### (iv) Toledo Necklace (JN5482).

The second Toledo Necklace, (Ex. 47), does not use any protectable expression that is found in any Sophia & Chloe design at issue, for similar reasons as discussed *supra* with regard to the first Toledo Necklace. The exterior piece in the second Toledo Necklace consists of Ogee arches on the top and bottom and then rounded lotus shapes on the sides.[7] None of those shapes is present in any of the Kiss Designs. The remaining expression in the second Toledo Necklace – *e.g.*, the etchings, lines, color, texture, etc. – is different from the expression in the Kiss Designs. (Mulder Decl., Ex. 1, Report, ¶¶20-22, 33-36 & Ex. B thereto.)

The second Toledo Necklace does not infringe upon any Sophia & Chloe copyright.

---

[7]   The shape of the exterior piece in the second Toledo Necklace – with rounded sides and Ogee arches on top and bottom – is particularly common in today's marketplace. (*See, e.g.*, McGuire Decl., Ex. 1, Report, pp. 14-20, 22, 87, 98, 104, 107, 109-13, 139, 170, 173-74, 178-79.)

**(v)    Toledo Statement Earrings (JE4452).**

The Toledo Statement Earrings, (Ex. 54), do not use any protectable

expression that is found in any Sophia & Chloe design at issue.

To be sure, the Toledo Statement Earrings and Buddha's Kiss Designs both

are shaped as a tear drop with an Ogee arch at the bottom.  But those design

elements are extremely common and therefore unprotectable.  (Wesley Decl., Ex.

200, Sherman Depo at 55:22-57:9.)  They must be "filtered out."  And once the

unprotectable elements are disregarded, there is no similarity – let alone substantial

similarity – between the Buddha's Kiss Designs and the Toledo Statement Earrings.

(Mulder Decl., Ex. 1, Report, ¶¶17-19, 33-36 & Ex. B thereto.)

In fact, Sophia & Chloe's own admissions during the copyright registration

process expose the hollowness of its Buddha's Kiss copyright claim.  Here is what

happened.  The Copyright Office initially rejected the application to register the

Buddha's Kiss design because it lacked sufficient originality.  In responding to the

denial, Sophia & Chloe clarified that the original expression that it claims as a

copyright is limited and particular – *i.e.*, "the henna symbol for the word 'kiss,' the

idea of the Buddha and the teardrop shape".  (Wesley Decl., Ex. 80.)  The Copyright

Office took Sophia & Chloe at its word.  It reversed its previous denial and issued a

registration because the Buddha's Kiss "contains a <u>sufficient</u>, **although minimal**,

amount of original and creative sculptural authorship *in the treatment and*

*configuration of its elements* that may be regarded as copyrightable and, therefore,

support a copyright registration."  (*Id.*) (italics added) (underline and bold in

original).

Brighton's Toledo Statement Earrings, however, do not share the "minimal"

expression claimed by Sophia & Chloe (and registered by the Copyright Office) as a

copyright.  Whereas the upper element of the Buddha's Kiss is convex and creates

the outline of a realistic (albeit pointy) head shape, the upper element of the Toledo

1 Statement Earrings is concave and does not resemble in any way the head of any

2 person (or popular depiction of a deity). In other words, the Buddha's Kiss Designs

3 express "the idea of the Buddha"; the Toledo Statement Earrings do not. Further,

4 the Buddha's Kiss Designs are comprised of four "kiss" shapes (or, more precisely,

5 three brackets and one Ogee Arch); the Toledo Statement Earrings are not. The

6 Toledo earrings instead consist of the Ogee Arch, four dots, four crescent moons,

7 and a triangle. In sum, Brighton did not use the "treatment and configuration of

8 [the] elements" of the Buddha's Kiss Designs that Sophia & Chloe claimed (and the

9 Copyright Office registered) as a copyright.

10       The Toledo Statement Earrings do not infringe.

11              **(vi)    Toledo Narrow Bangle (JB3570).**

12       The Toledo Narrow Bangle, (Ex. 45), does not use any protectable expression

13 that is found in any Sophia & Chloe design at issue.

14       The Toledo Narrow Bangle and the Kiss Bangle (Ex. 44) are both

15 Multipointed Medallions. But Sophia & Chloe does not have a monopoly on the

16 idea of a Multipointed Medallion – a shape that artisans have used for centuries.

17 (*See, supra*, Section 2.A(2) & 2.B.) And the parties' respective expressions of the

18 Multipointed Medallion are different. The Kiss Bangle is comprised of seven

19 brackets; the Toledo Narrow Bangle has eight. The bangles also have different

20 colors, thicknesses, textures, and etchings. (Mulder Decl., Ex. 1, Report, ¶¶29-31,

21 33-36 & Ex. B thereto.)

22       Summary judgment should be granted on Sophia & Chloe's copyright claims.

23       **B.    Trade Dress And Unfair Competition Claims.**

24              **(1)    The law governing trade dress and unfair competition.**

25       "Trade dress" applies the concepts and law of trademark to things other than

26 words or graphic logos. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209-

27 10 (2000). Therefore, the elements of trademark and trade dress infringement are

28

the same, and courts in trade dress cases routinely rely upon trademark case law and
vice versa. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair
Competition*, §8:1 (2014) ("Today, unregistered trade dress is protected under
federal Lanham Act §43(a) under the same rules as are trademarks"). The elements
of a trade dress infringement claim under the federal Lanham Act are also the same
as the elements of an unfair competition claim under California statutory and
common law. *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).

Where, as here, the claimed trade dress consists of a line of multiple product
designs, courts first examine whether the products in the line have a "consistent
overall look." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172 (3d. Cir. 2000);
McCarthy, *supra*, §8:5.50 ("In a number of cases, a court has dismissed trade dress
claims because plaintiff could not identify a protectable and consistent appearance
of the product line"). Courts insist upon consistency throughout a product line trade
dress in an effort to safeguard competition. *Rose Art*, 235 F.3d at 172 ("when
protection is sought for an entire line of products, our concern for protecting
competition is acute"), quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*,
113 F.3d 373, 380 (2d. Cir. 1997).

Assuming the claimed trade dress has a consistent overall look, then courts
proceed to evaluate the standard infringement and unfair competition elements:
"that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary
meaning, and (3) there is a substantial likelihood of confusion between the
plaintiff's and defendant's products." *Art Attacks*, 581 F.3d at 1145.

**(2)    The claimed trade dress does not have a consistent,
distinctive overall look and feel.**

Sophia & Chloe's claimed trade dress is a hodgepodge of 64 disparate designs
– from a gold tear drop-shaped earring with a hanging jewel to a simple silver
Bracket Frame earring to a traditional Moroccan bangle. (Wesley Decl., Ex. 59;

DEFENDANT BRIGHTON'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

McGuire Decl., Ex. 1, Report, ¶36)  The only commonality is a Moroccan design aesthetic and the use of the bracket shape. (Wesley Decl., Ex. 202, Ansolabahere Depo at 44:7-45:16.)  Of course, no company – big or small – can own a monopoly on Moroccan-style design or a basic shape like the bracket. *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1176-77 (N.D. Cal. 2007) ("The concept of trade dress is not so pliable that it can be stretched to give exclusive rights to such abstract images or marketing themes as those proposed by plaintiff").

In addition, although Brighton acknowledges the challenge inherent in verbally describing a product design trade dress, Sophia & Chloe's description of its trade dress exemplifies the ambiguity and sweeping scope of its claimed intellectual property.[8]  For example, what is the "specific angular orientation" of the brackets in Sophia & Chloe's trade dress?  In fact, there is no one specific orientation; rather, the 64 styles utilize many different angular orientations – from a quatrefoil to a circle to a tear drop.  As another example, what is the "specific size and scale" of the pieces in the claimed trade dress and what constitutes a "feminine accent"?  In fact, the 64 styles comprising the alleged trade dress have many different sizes and scales and many different accents.  Moreover, although some of the 64 designs have the "dangling stones or crystals" element of the trade dress, others do not.  (McGuire Decl., Ex. 1, Report, ¶¶34-39.)

In sum, this is a textbook case of an overly broad, inconsistent alleged trade dress that is unprotectable. McCarthy, *supra*, §8:5.50.  And absent a protectable trade dress, Sophia & Chloe's trade dress infringement and unfair competition claims fail as a matter of law.

---

[8]  "[T]he bracket (or 'kiss') shape, connected at a specific angular orientation; pieces of specific size and scale; dangling stones or crystals; embedded and secret symbolic elements; smaller Kiss designs surrounded by larger ones; and feminine accents." (Wesley Decl., Ex. 35, Resp. to Interrog. No. 11.)

12-CV-2472 AJB KSC

1     **(3)    The claimed trade dress has not acquired secondary**
2             **meaning.**

3           "Secondary meaning . . . occurs when, in the minds of the public, the primary
4    significance of a [mark] is to identify the source of the product rather than the
5    product itself." *Samara Bros.*, 529 U.S. at 211; *see also Levi Strauss & Co. v. Blue*
6    *Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) ("The basic element of secondary
7    meaning is . . . the mental association by a substantial segment of consumers and
8    potential consumers between the alleged mark and a single source of the product.").
9    Methods of establishing secondary meaning include "direct consumer testimony;
10   survey evidence; exclusivity, manner, and length or use of a mark; amount and
11   manner of advertising; amount of sales and number of customers; established place
12   in the market; and proof of intentional copying by the defendant." *Art Attacks*, 581
13   F.3d at 1145.

14          Sophia & Chloe cannot come close to sustaining its burden of showing its
15   trade dress has acquired secondary meaning for the following reasons.

16          First, Sophia & Chloe has no direct, unbiased testimony from any of its
17   customers.  Nor did Sophia & Chloe conduct a consumer survey.  These deficiencies
18   are glaring and near fatal in themselves.  *Global Mfg. Group, LLC v. Gadget*
19   *Universe.com*, 417 F. Supp. 2d 1161, 1170-71 (S.D. Cal. 2006) ("Evidence such as
20   customer surveys are important because the purpose of the trade dress protection is
21   to protect consumers from confusion or deception; therefore, the purchasing public's
22   perspective is central to the determination of acquired meaning"), citing *Filipino*
23   *Yellow Pages, Inc. v. Asian Journal Pubs., Inc.*, 198 F.3d 1143, 1152 (9th Cir.
24   1999); *see also Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 870
25   (9th Cir. 2002); McGuire Decl., Ex. 1, Report, ¶¶39-41.

26          Second, although Sophia & Chloe sold products incorporating its trade dress
27   for about five years before Brighton began selling the Toledo line, "secondary

28

meaning requires more than extensive use alone." *Art Attacks*, 581 F.3d at 1146
(affirming summary judgment in favor of defendant on issue of secondary meaning
despite plaintiff's use of alleged trade dress for over five years). Rather, the relevant
question is whether Sophia & Chloe's marketing and sales of its trade dress were
extensive, public, and effective enough to cause a substantial percentage of
consumers to recognize the trade dress as coming from only one source.

Sophia & Chloe cannot come close to the requisite showing. (*See*, *supra*,
Section 4.A(2)(c).) It sold less than ████ units of products bearing the alleged trade
dress before Brighton began selling the Toledo jewelry. Its advertising efforts and
expenditures were limited. It does not sell to any retailers in the majority of states,
and it sells to only one or a few stores in all states except California. The number of
Sophia & Chloe customers are in the hundreds, (Wesley Decl., Ex. 202,
Ansolabahere Depo at 14:9-15:16), and only about █ percent of the Sophia &
Chloe product purchased by its customers incorporated the claimed trade dress.
(Wunderlich Decl., ¶2.) Courts have held that trade dresses lacked secondary
meaning as a matter of law despite far more extensive sales and advertising
activities than those of Sophia & Chloe. *Art Attacks*, 581 F.3d at 1146.; *Global Mfg.
Group*, 417 F. Supp. 2d at 1171-72 (summary judgment based on lack of secondary
meaning despite quarterly sales in the millions of dollars); *Sharper Image Corp. v.
Target Corp.*, 425 F. Supp. 2d 1056, 1073-74 (N.D. Cal. 2006) (no secondary
meaning as matter of law despite "evidence of a heavy advertising campaign");
*Continental Laboratory Products, Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992,
1000-04 (S.D. Cal. 2000) (summary judgment based on lack of secondary meaning
in light of "paltry" annual promotional expenditures of $15,000 and sales of 229,000
units).

Third, Sophia & Chloe's use of its claimed trade dress was not exclusive. Far
from it. Myriad other designers have been selling Moroccan-themed jewelry,

including jewelry incorporating bracket shapes. (*See, supra*, Section 2.B.) The widespread third-party use of the same or similar trade dress indicates that consumers do not believe the claimed trade dress identifies a single source. *Levi Strauss*, 778 F.2d at 1358 ("Evidence of third party usage did exist and is relevant to disprove the existence of secondary meaning"); McCarthy, *supra*, §8:11.50 ("It is extremely difficult for a seller to successfully prove that a product or package design has achieved secondary meaning when the design is a common one put on the market by other sellers").

Fourth, there is no proof that Brighton copied Sophia & Chloe's trade dress in an effort to cause consumer confusion or appropriate the goodwill Sophia & Chloe had developed with its consumers. *Continental Laboratory Products*, 114 F. Supp. 2d at 1010 ("[I]ntentional copying supports a finding of secondary meaning only where the defendant intended to confuse consumers and pass off its product as the plaintiff's"); *Regal Jewelry v. Kingsbridge Int'l, Inc.*, 999 F. Supp. 477, 490 (S.D.N.Y. 1998) ("[I]t appears likely that [plaintiff's] trade dress is such a common use . . . in the relevant market place that defendants and their suppliers did not recognize that trade dress as protectable"); McCarthy, *supra*, §8:19 ("[E]vidence that a junior user exactly copied unprotected descriptive, generic or functional public domain words or shapes does not prove any legal or moral wrong"). Nor could a reasonable juror infer that Brighton copied Sophia & Chloe's trade dress in an effort to confuse consumers and trade upon Sophia & Chloe's goodwill. Brighton has a longstanding, successful jewelry business and customer base. It would be illogical to infer that Brighton deliberately copied Sophia & Chloe in an effort to usurp Sophia & Chloe's goodwill with consumers. Sophia & Chloe agrees. (Wesley Decl., Ex. 202, Ansolabahere Depo at 39:19-40:2.)

In sum, no reasonable juror could find that Sophia & Chloe's trade dress has acquired distinctiveness or "secondary meaning" in the marketplace. Thus, Sophia

1 & Chloe does not own a protectable trade dress as a matter of law, and judgment
2 must be entered against it on its trade dress infringement and unfair competition
3 claims.

4 **(4)** **Confusion as to the source of the parties' products is not**
5 **likely amongst an appreciable number of consumers.**

6 The final element of a trade dress claim is whether the defendant's product
7 designs are likely to cause confusion, amongst an appreciable number of consumers,
8 as to the source of the parties' respective products. The Court need not evaluate this
9 element because Sophia & Chloe does not own a protectable trade dress.
10 Nevertheless, even if Sophia & Chloe's claimed trade dress were protectable, no
11 reasonable juror could find a likelihood of source confusion caused by Brighton.

12 As the Court likely recalls, the "*Sleekcraft* test" is used to gauge whether
13 there is a "likelihood of confusion." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341,
14 348-49 (9th Cir. 1979). The *Sleekcraft* factors are: (1) strength of the mark; (2)
15 proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion;
16 (5) marketing channels used; (6) type of goods and the degree of care likely to be
17 exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8)
18 likelihood of expansion of the product lines. *See id.*

19 In applying the *Sleekcraft* factors, however, it is important to remember that
20 not all confusion is relevant. The only actionable confusion is that related to the
21 source of the parties' products. In other words, for purposes of trade dress
22 infringement, "[t]he buyer is not confused unless he is looking for a package he
23 recognizes and picks another in his confusion." McCarthy, *supra*, §8.8; *see also*
24 *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir. 2005)
25 (cautioning that confusion should not be found based on a general similarity in
26 overall appearance of the product designs because "[m]any, if not most, consumer
27 products will tend to appear like their competitors at a sufficient distance").

28

12-CV-2472 AJB KSC

1      Application of the *Sleekcraft* factors and common sense compels a finding

2 that there is no likelihood of confusion, amongst an appreciable number of

3 consumers, as to the source of the parties' products.  <u>First</u>, if the Court were to find

4 the trade dress is protectable (it is not), it would be a very, very weak trade dress due

5 to its extensive use by third parties and limited use by Sophia & Chloe.  <u>Second</u>,

6 there are substantial differences in the parties' jewelry designs, particularly when

7 viewing them up close, as customers and potential customers would do in a store.

8 <u>Third</u>, there is no evidence of actual consumer confusion as to source.  <u>Fourth</u>,

9 Brighton did not deliberately copy the trade dress in an effort to confuse consumers

10 or trade upon Sophia & Chloe's goodwill.  <u>Fifth</u>, all of Brighton's products bear

11 Brighton branding, and vice versa.  (Kohl Decl., ¶6; Wesley Decl., Ex. 202,

12 Ansolabahere Depo at 11:16-12:24.)

13      Under these circumstances, no reasonable juror could find that an appreciable

14 number of consumers are likely to believe Brighton's jewelry came from or is

15 affiliated with Sophia & Chloe, or vice versa.

16 **5.**    **In the Alternative, Summary Adjudication Should Be Granted In Favor**

17        **Of Brighton On Certain Remedies.**

18      Brighton respectfully submits that no reasonable juror could find against it on

19 liability, and therefore summary judgment should be granted in its favor.  However,

20 if the Court disagrees, in whole or part, then summary adjudication should be

21 granted on certain remedies claimed by Sophia & Chloe.

22      **A.**    **Sophia & Chloe's Claim For Actual Damages Should Be**

23         **Summarily Adjudicated In Favor Of Brighton.**

24      Although Sophia & Chloe pled a claim for "actual damages" under both the

25 Lanham Act and Copyright Act, (Compl. ¶¶35, 44, Prayer for Relief ¶4), Sophia &

26 Chloe represented that it no longer intends to seek that form of remedy.  (Wesley

27 Decl., Ex. 206.)  Moreover, Sophia & Chloe has not identified, pursuant to Rule 26

28

         12-CV-2472 AJB KSC

of the Federal Rules of Civil Procedure, any evidence of actual damages or a reasonable method of calculating those damages. Therefore, Brighton respectfully requests that the Court summarily adjudicate Sophia & Chloe's claim for actual damages in favor of Brighton.

**B.    Sophia & Chloe Would Be Entitled To A Maximum Of Three Statutory Damage Awards.**

Under the Copyright Act, a copyright owner is entitled to an award of statutory damages of up to $30,000 per each "work" that was infringed (or, for willful infringement, up to $150,000 per infringed "work"). 17 U.S.C. §504(c). Each copyright, however, does not necessarily correspond to a separate "work"; rather, "separate copyrights are not distinct works unless they can 'live their own copyright life.'" *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990), quoting *Robert Stigwood Group, Ltd. v. O'Reilly*, 530 F.2d 1096, 1105 (2d. Cir. 1976). So, for example, even though Disney owns six separate copyright registrations for six different illustrations of Mickey Mouse and Minnie Mouse, the Court of Appeals limited the number of statutory damage awards Disney could recover to two – *i.e.*, one for Mickey and one for Minnie. *Id.* at 570.

Here, Sophia & Chloe claims to own 13 different copyrights. However, there are only three "works" that could (theoretically) "live their own copyright life" – *i.e.*, the Kiss Design, the Buddha's Kiss Design, and the Kiss Bangle. Therefore, the Court should rule, as a matter of law, that Sophia & Chloe cannot recover more than three statutory damage awards under the Copyright Act.

DATED: March 28, 2014

BROWNE GEORGE ROSS LLP
Peter W. Ross
Keith J. Wesley

By     s/ Peter W. Ross
        Peter W. Ross
Attorneys for Defendant Brighton Collectibles, LLC

DEFENDANT BRIGHTON'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES** |
| 3 | At the time of service, I was over 18 years of age and not a party to this |
| 4 | action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067. |
| 5 | On March 28, 2014, I served true copies of the following document(s) |
| 6 | described as **DEFENDANT BRIGHTON COLLECTIBLES, LLC'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND** |
| 7 | **AUTHORITIES** on the interested parties in this action as follows: |

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On March 28, 2014, I served true copies of the following document(s) described as **DEFENDANT BRIGHTON COLLECTIBLES, LLC'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Kenneth M. Fitzgerald, Esq.<br>Curtis G. Carll, Esq.<br>Chapin Fitzgerald LLP<br>550 West C Street, Suite 2000<br>San Diego, California 92101<br>Tel.: 619.241.4810<br>Fax: 619.955.5318<br>Email: kfitzgerald@cftriallawyers.com<br>ccarll@cftriallawyers.com | Attorneys for Plaintiff Sophia & Chloe, Inc. |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 28, 2014, at Los Angeles, California.

_____
Diane Torosvan