# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOPHIA & CHLOE, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHTON COLLECTIBLES, INC., a California Corporation,<br><br>Defendant. | Case No.: 12-CV-2472-AJB-KSC<br><br>**ORDER:**<br>**(1) DENYING BRIGHTON COLLECTIBLES, INC.'S MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE COSTS**<br>**(Doc. No. 249); and**<br><br>**(2) DENYING SOPHIA & CHLOE'S MOTION TO RE-TAX COSTS**<br>**(Doc. No. 256)** |

Before the Court is Defendant Brighton Collectibles, LLC's motion for attorney's fees and non-taxable costs under both the Copyright Act and the Lanham Act. (Doc. No. 249.) Because the Court finds the balance of factors favors no award, the Court **DENIES** granting fees and costs under the Copyright Act. As to fees under the Lanham Act, the Court **DENIES** granting fees and costs because the Court does not find this case to be exceptional—even under the relaxed standards set forth in the Ninth Circuit. Accordingly, the Court **DENIES** that motion in its entirety. (Doc. No. 249.)

Sophia & Chloe also moves the Court to re-tax costs, arguing it should not be required to pay costs the Court Clerk entered. (Doc. No. 256.) Finding that Sophia & Chloe

failed to rebut the presumption of costs in favor of the prevailing party, the Court also **DENIES** that motion. (*Id.*)

## I. BACKGROUND

This dispute arose from Brighton's willful infringement of Sophia & Chloe's ("S&C") jewelry.[1] During a jury trial, the jury found that ten of S&C's copyrights were invalidated, one of S&C's copyrights was valid, but that Brighton did not infringe on it, and that two of S&C's copyrights were valid and Brighton infringed on them. (Doc. Nos. 161; 249 at 17.) Post-trial, the parties filed dueling attorney's fees motions, which the Court denied. Both parties then appealed to the Ninth Circuit. The Ninth Circuit found that only the Buddha's Kiss copyrights were protected against "virtually identical" copying, and that Brighton's designs did not infringe. The Court also noted that after this Court's denial of attorney's fees under the Lanham Act, the Circuit overruled nearly all its precedence for fees under the Act. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). The Court then vacated the judgement and remanded the case to this Court for reconsideration of the denial of Brighton's attorney's fees. Brighton then filed the instant motion for attorney's fees under both the Copyright Act and the Lanham Act. (Doc. No. 249.)

## II. ATTORNEY'S FEES UNDER THE COPYRIGHT ACT

### A. LEGAL STANDARDS

The Copyright Act of 1976 permits the district court to award a prevailing party costs and attorney's fees. 17 U.S.C. § 505. Fees are proper under this statute when either successful prosecution or successful defense of the action furthers the purposes of the Copyright Act. *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("[A] successful defense of a copyright infringement action may further the policies of the

---

[1] The Court has summarized this case's background in prior orders. (*See* Doc. Nos. 86, 218.) The Court assumes familiarity with those orders and accordingly will recite here only those facts necessary to understand the case's posture with respect to the instant motion.

Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.") (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994)). As such, prevailing defendants as well as prevailing plaintiffs are eligible for such an award, and the standards for evaluating whether an award is proper are the same regardless of which party prevails. *Fogerty*, 510 U.S. at 534.

The key factor in determining whether to award fees under the Copyright Act is whether the award will further the purposes of the Act. *Fantasy*, 94 F.3d at 558 (9th Cir. 1996). The Act's "ultimate aim is . . . to stimulate artistic creativity for the general public good." *Fogerty*, 510 U.S. at 526 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)).

In determining whether to award attorney's fees, the court may consider nonexclusive factors such as: (1) the degree of success obtained; (2) frivolousness of the losing party; (3) motivation of the losing party; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence. *See Fantasy*, 94 F.3d at 534 n.19; *see also Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010).

Every factor does not need to be met for a court to award or deny fees. *See Fantasy, Inc.*, 94 F.3d 553, 556–60 (upholding an award of attorney's fees based on the prevailing party's success and the policy objectives of the Copyright Act, even though the district court found that none of the "culpability" factors of frivolousness, motivation, or objective unreasonableness weighed against the losing party); *see also Metcalf v. Bocho*, 200 Fed. App'x. 635 (9th Cir. 2006) (because half of the factors weigh in favor of defendants and half against them, district court did not abuse its discretion by denying attorneys' fees to defendants). Moreover, fees are not awarded automatically to every prevailing party; it is only at the court's discretion. *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996); *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (affirming district court's denial of attorney's fees and costs to prevailing defendant).

B.     **DISCUSSION**

   1.     **Degree of Success Obtained**

Brighton asserts it "achieved maximum success, defeating all 13 copyright claims, invalidating 10 copyrights, and obtaining a judicial declaration that substantially narrowed the scope of two other copyrights." (Doc. No. 249 at 20.) S&C submits that "this was a very close case" which was decided on appeal by a divided panel and that Brighton only narrowly won. (Doc. No. 255 at 19.)

The material alteration test governs the prevailing party inquiry for an award of attorney's fees under the Copyright Act. *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009). This inquiry defines a prevailing party to mean one "who was awarded some relief by the court." *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. Of Health and Human Resources*, 532 U.S. 598, 603 (2001). The key inquiry is whether some court action has created a "material alteration of the legal relationship of the parties." *Id.* at 604 (internal quotation marks omitted). Ninth Circuit case law holds that "attorney's fees may be properly denied where [a party's] success on a legal claim can be characterized as purely technical or de minimis . . . De minimis judgments are those that confer no right on the party—those that do not affect the obligations of the defendants toward the plaintiff." *Park, ex rel. Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1246 (9th Cir. 2006) (citation and internal quotation marks omitted).

Looking at the factor through this lens, it is clear to the Court that Brighton prevailed on the merits of the claims themselves and not on a purely technical or de minimis basis. Brighton invalidated 10 copyrights, which materially altered the legal relationship of the parties, affected the obligations of the parties with respect to each other, and narrowed the scope of two other copyrights to a virtually identical standard. Thus, despite the divided panel, this factor weighs in favor of awarding attorney's fees to Brighton.

   2.     **Frivolousness of the Losing Party**

S&C argues its lawsuit was not frivolous by pointing to the Court's partial denial of summary judgment, as well as two motions for judgment as a matter of law. (Doc. No. 255

at 20.) S&C again points to the Ninth Circuit's split panel and a "persuasive dissent and a vote by the dissenting judge to rehear the appeal and review it *en banc*" as proof that the case was not frivolous. (*Id.*)

A claim is frivolous when it is "clearly baseless" and involves "fantastic or delusional scenarios." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-00371 JW, 2005 WL 2007932, at *4 (N.D. Cal. Aug.12, 2005) (quoting *Neitzke v. Williams*, 490 U.S. 324, 327–28 (1989)). "A claim is not frivolous merely because it is unsuccessful." *Bisson-Dath v. Sony Computer Entm't Am. Inc.*, No. CV-08-1235 SC, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012). The standard for frivolousness appears to be "somewhat" higher than the standard for objective unreasonableness. *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *11 (C.D. Cal. Mar. 24, 2015).

S&C's arguments are not lost on the Court. If a divided Ninth Circuit panel could not agree on which standard should have applied, how could the Court expect S&C—a sophisticated business entity, but not a legal one—to understand the discernment between "substantially similar" and "virtually identical" when bringing their lawsuit? If one other judge agreed with Judge Rawlinson, then the case would have been remanded for a new trial to apply the substantially similar standard. With this framework in mind, Brighton's allegations of bad faith pre-litigation fail to show S&C was only acting to secure financial benefits. Brighton argues S&C was "trying to profit from an overly broad, unreasonable interpretation of the copyright laws of our country," however the dissent's reasoning, albeit not controlling, at the very least shows S&C's position is not unreasonable. Thus, this factor weighs in favor of S&C.

### 3. Motivation of the Losing Party

Brighton alleges that S&C's motivation was not to protect her business or "protect[] a valuable business or asset" because—as Brighton alleges—S&C "spent more time and effort threatening or litigating copyright claims than cultivating its business." (Doc. No. 249 at 22.) Brighton asserts S&C's motivation was "to profit from an overly broad, unreasonable interpretation of the copyright laws of our country." (*Id.* at 23.) S&C

assert that its "motivation in bringing this case were legitimate and simple: to protect Sophia & Chloe's original creations and thereby preserve and enhance its business." (Doc. No. 255 at 21.) S&C argues it had to pursue litigation to enforce its copyrights, otherwise they risk forfeiture, and the copyrights were important business investments to make the business more valuable. (Doc. No. 255 at 21–22.) S&C also asserts it "pursued only colorable claims, and did so in order to survive." (*Id.* at 22.)

"[T]he existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party." *Frost-Tsuji Architects*, 2015 WL 5601853, at *7. "A finding of bad faith can be based on actions that led to the lawsuit, as well as on the conduct of the litigation." *Id.* Courts have held a plaintiff demonstrates bad faith when alleging a copyright claim to secure benefits other than merely addressing grievances. *E.g., Maljack Prod., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996) (finding an improper motivation where evidence demonstrated that plaintiff brought lawsuit in effort to expose defendant to risk and to secure competitive advantage in the market).

Brighton refutes some of S&C's claims by noting that S&C "demanded *money* from its targets [including, but not limited to, Brighton], which were sued if they did not pay up." (Doc. No. 258 at 2.) Brighton points to S&C's original demand letter, which did not include a request to stop infringing on their copyrights, but instead asked for "an accounting of all revenue so that Sophia & Chloe could calculate compensation that Brighton would have to pay to avoid being sued." (Doc. No. 249 at 22.) Indeed, attached as an exhibit to Peter Ross's declaration is the demand letter, which states: "We will need a complete accounting of all revenues from the sale of the Toledo line of jewelry, so that we can formulate a demand for compensation to remedy this infringement." (Doc. No. 249-3, Ross Decl., Ex. I.) And another declaration submitted by S&C informs that S&C received disgorged profits from other infringers it sent demand letters to. (Doc. No. 79-4, Sherman Decl., ¶ 20.) Brighton finally states that it defended against the lawsuit rather than comply with the demand letter because it believed it was not infringing on any copyrights—and

Brighton was correct, the jury and Ninth Circuit, in combination, found it did not infringe on any of S&C's copyrights.

Brighton also objects to S&C's claim that it needed to bring the lawsuit enforcing its copyrights to survive, and notes in its reply that only 11% of S&C's profits came from its copyrighted products; that the products were already on a "downward trend" before Brighton's products were released; and that S&C's "overall sales were also steadily declining years *before* Brighton began selling" its products. (Doc. No. 258 at 2–4.) S&C had also testified that she was letting the business coast while her children were in school and would focus on the business later down the road.

Finally, Brighton negates S&C's argument that it needed to bring litigation on its copyrights or risk foreclosure of them. (Doc. No. 258 at 5 n.3.) S&C quotes to a Ninth Circuit case purporting to hold that "a copyright owner risks forfeiture of its copyrights by not enforcing it against others." (Doc. No. 255 at 21 (citing to *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985)).) However, Brighton is correct that S&C's assertion is incorrect. *Transgo, Inc.* states that "[a] copyright can be forfeited through some overt act which indicates the copyright proprietor's desire to surrender its rights." *Transgo, Inc.*, 768 F.2d at 1019. The line of cases stemming from this principle hold that failure to place copyright notices on published works may constitute a forfeiture of that copyright—but talks nothing of failure to litigate a copyright will result in losing it.

Thus, the Court finds that the scale tips to Brighton here. For each reason S&C claims they brought the lawsuit, Brighton was able to refute. While the Court does not necessarily adopt the narrative Brighton repeatedly asserts, they have convinced the Court that S&C's motives leading up to the lawsuit and in litigation show degrees of bad faith. This factor weighs in favor of Brighton.

### 4. Objective Unreasonableness of Losing Party's Position

Brighton argues "Sophia & Chloe's copyright claim was objectively unreasonable." (Doc. No. 249 at 20–21.) Brighton gives several examples of why Sophia & Chloe's factual

and legal arguments were not reasonable. First, Brighton notes it "claimed a monopoly on shapes that even it and its jewelry expert admitted are extremely common or 'ubiquitous.'" (*Id.* at 20.) Second, Brighton claims "Sophia & Chloe gave incredible testimony" surrounding the shape of the earrings by another designer claiming it was "completely different" from hers, while also testifying that Brighton's shape was "virtually identical" to her own. (*Id.* at 21.) Third, Brighton states that S&C "individually registered slight variations of the same designs and then used its 13 registrations to seek a statutory damage award of nearly $2 million — i.e., more than Sophia & Chloe had made in revenue over its nearly decade-long existence." (*Id.*) Finally, Brighton argues that S&C continued to allege Brighton's "Toledo Cuff Bangle" infringed on S&C's copyright knowing "it had no piece that looked anything like the accused product." (*Id.* at 22.)

"A claim is objectively unreasonable where the party advancing it 'should have known from the outset that its chances of success in this case were slim to none.'" *See Giganews, Inc.*, 2015 WL 1746484, at *11 (quoting *SOFA Entm't, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013)). Similarly, "[a] claim that is not 'objectively unreasonable' at the outset can become so if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none." *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496-SOM/BMK, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015). The "mere fact that [a party] lost cannot establish his objective unreasonability." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013).

S&C rebuts the lionshare of Brighton's claims. It states that the Court found in both the summary judgment phase and during trial that the evidence could support infringement. (Doc. No. 255 at 23.) S&C also notes the Court previously rejected the argument in its summary judgment order that S&C "was misusing copyright to monopolize common shapes." (*Id.* (citing to Doc. No. 86 at 8–11.) Finally, S&C points to the Court's finding that substantial evidence supported the jury's findings and upheld that standard during and after trial.

Although the Ninth Circuit ultimately disagreed, similar to the Court's analysis regarding frivolousness, *supra*, the Court agrees with S&C that their litigation position was not objectively unreasonable. Thus, this factor weighs in favor of S&C.

### 5. Considerations of Compensation and Deterrence

An award of attorney's fees may advance the purposes of the Copyright Act if it encourages other parties to defend themselves when they have valid defenses. *Goldberg v. Cameron*, No. C-05-03534 RMW, 2011 WL 3515899, at *6 (N.D. Cal. Aug. 11, 2011); *Omega S.A. v. Costco Wholesale Corp.*, No. CV 04-05443 TJH RCX, 2012 WL 3150432, at *1 (C.D. Cal. June 20, 2012) aff'd, 776 F.3d 692 (9th Cir. 2015) ("awarding Costco attorneys' fees would encourage future defendants to resist improperly-motivated infringement actions, and would deter the filing of such actions"). This is particularly important "[w]hen the prevailing party is the defendant, who by definition receives not a small award but no award . . . . For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights" under the Copyright Act. *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) (citation omitted)).

The Court finds this factor is neutral. Neither party needs to be discouraged or deterred from the position it took. As stated numerous times herein, the Court finds that S&C's litigation position was reasonable, but also that Brighton's defense position was reasonable. A fee award to either party would deter those who should be properly prosecuting and defending claims under the Copyright Act.

### 6. Other Factors

Courts in this circuit also consider "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763, 766 (9th Cir. 2003). Thus, the Court must consider whether, in light of the losing party's financial condition, it would be inequitable to award attorney's fees. *Id.*

S&C asserts that "[a] fee award to Brighton will destroy what is left of Sophia &

9

12-CV-2472-AJB-KSC

Chloe." (Doc. No. 255 at 25.) In its declaration accompanying the opposition, S&C states it only has $2,353 in cash, between $5,000 – $20,000 of inventory, operates out of a converted garage, and its 2017 annual sales were under $30,000. (Doc. No. 255-1, Sherman Decl. ¶¶ 33–35.) S&C also states in its declaration it has no way to "satisfy an award of attorney's fees to Brighton. (*Id.* at ¶ 34.) S&C also states it fears Brighton would attempt to pierce the corporate veil and go after Sherman personally, which would be devastating to her. (*Id.* ¶ 35.)

Brighton argues that "No Ninth Circuit or Supreme Court case authorizes this Court to consider Sophia & Chloe's financial status." (Doc. No. 258 at 9.) However, the Court found numerous Ninth Circuit and district court cases taking this factor into consideration. *See Ets-Hokin*, 323 F.3d at 766; *Epikhin v. Game Insight North America*, No. 14-cv-04383-LHK, 2016 WL 1258690, at *8–9 (N.D. Cal. Mar. 31, 2016); *Frost-Tsuji Architects*, 2015 WL 5601853, at *8. Brighton also attacks the sufficiency of S&C's evidentiary showing of impecuniousness, noting it is self-serving and lacks detailed documentation. (Doc. No. 258 at 9, n.6.) However, Brighton cannot dispute that S&C is a small business owned by one person, who's declining sales is clear in the record—as Brighton noted when discussing the coasting of S&C's business. Thus, this factor weighs in favor of S&C.

### 7. Balance of Factors and the Purposes of the Copyright Act

In sum, the factors are nearly evenly split between the parties. The degree of success obtained and S&C's motivation weigh in favor of granting fees, while objective reasonableness, frivolousness, and S&C's impecuniousness weigh against an award of fees. The compensation and deterrence factor is neutral. Viewing these factors in the totality of the circumstances, the Court concludes that an award of fees does not further the purposes of the Copyright Act.

"The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. The Copyright Act commonly accomplishes that purpose by incentivizing plaintiffs to protect their copyrights even though a successful defense may also promote

that purpose. *See Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *5. The Ninth Circuit has affirmed that a defense on the merits furthers the purposes of the Copyright Act in a way that "a technical defense, such as . . . copyright registration requirements" does not. *Fogerty II*, 94 F.3d at 556, 560 (noting that prevailing parties are not automatically awarded attorney's fees because, in part, "copyright defendants do not always reach the merits, prevailing instead on technical defenses").

Here, the Court finds the factors are nearly split, and notes that this was a difficult conclusion to come to. While S&C may not have had the best intentions in bringing their lawsuit, i.e., a bad faith motivation, the merits of their claim was strong enough to be reasonable. If the substantially similar standard was used rather than the virtually identical one, S&C might have even prevailed on the merits. That being said, Brighton had a valid defense on the merits and gained a sweeping win, invalidating nearly all of S&C's copyrights. However, a hindsight-victory does not tip the scale in favor of attorney's fees. Although the jury invalidated many of S&C's copyrights, a jury also found willful infringement, and a Ninth Circuit dissent agreed with S&C's arguments. Both parties in this case exemplified the primary objective of the Act: reasonableness in belief versus merit in defense. Looking at these factors under the totality of circumstances, the Court finds that they ultimately weigh against finding an award of attorney's fees. Thus, the Court **DENIES** Brighton's request for attorney's fees under the Copyright Act.

### III. ATTORNEY'S FEES UNDER THE LANHAM ACT
#### A. LEGAL STANDARDS

The Lanham Act permits an award of reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Originally, "[w]hile the term 'exceptional' [was] not defined in the statute, generally a trademark case [was] exceptional for purposes of an award of attorneys' fees when the infringement [was] malicious, fraudulent, deliberate or willful." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993).

In 2016, the Ninth Circuit in *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016), relied on the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), to abrogate *Lindy Pen Co.* and modify the standard definition of "exceptional" in attorney fee recovery Lanham Act cases. *SunEarth, Inc.*, 839 F.3d at 1180. Ultimately, the Ninth Circuit held that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case [is] exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *Id*. at 1181 (internal citation omitted).

The Ninth Circuit also defined an exceptional case as one that simply "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1180 (citation omitted). The nonexclusive factors in determining if a case is "exceptional" include: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1181 (citation omitted). There is no doubt that "*Octane Fitness* lowered the bar for an exceptional case finding[.]" *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 102 (D. Mass. 2015). Additionally, despite the Ninth Circuit's decision to alter the definition of "exceptional," the Federal Circuit held that *Octane Fitness* "gave no indication that [the Federal Circuit] should rethink [its] litigation misconduct line of § 285 cases" and stated that "district courts can turn to [] pre-*Octane Fitness* case law for guidance" regarding such arguments. *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015).

In sum, litigation brought in bad faith or with objectively baseless claims may be considered exceptional, as may litigation demonstrating inequitable conduct or willful infringement. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 525 n.12 (1994); *see also Octane Fitness*, 134 S. Ct. at 1757 ("[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee

award."). Similarly, courts "have awarded attorneys' fees . . . where a party advances arguments that are particularly weak and lack support in the record or seek only to re-litigate issues the court has already decided." *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.C. Cir. 2015). Thus, the determination of "exceptional" falls squarely within the discretion of the trial court. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014).

Here, Brighton asks the Court to award it attorney's fees for defending against S&C's trade dress claim, arguing: (1) no evidence of likelihood of confusion; (2) no evidence to show secondary meaning; and (3) the relaxed standard for awarding attorney's fees should change the Court's prior analysis on this issue.

**B.    DISCUSSION**

While the Ninth Circuit overruled much of its precedence defining what an exceptional case is under the Lanham Act, the Ninth Circuit did not overturn the substantive law or balance of factors used to determine a trade dress claim. The Court addressed this claim thoroughly in its prior order denying attorney's fees. (Doc. No. 218.) Rather than re-analyze the entire test, the Court will briefly discuss each of the factors addressed in the motion and spend its judicial resources discussing whether those factors make this an exceptional case under the new standard.

"[T]rade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics." V*ision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 613 (9th Cir. 1989) (internal quotation marks omitted). To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products. *Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998). In summary judgment, Brighton challenged the sufficiency of Plaintiff's evidence on the secondary meaning and confusion elements.

///

### 1. Likelihood of Confusion

In a trade dress infringement claim, Plaintiff bears the burden of establishing that the defendant's use of the same or similar mark is likely to cause consumer confusion. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). Courts use the eight factors listed in *Sleekcraft* to evaluate the likelihood of confusion: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. *Id.*; *see Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2007).

Brighton alleges that S&C only addressed one factor, "while ignoring the rest." (Doc. No. 249 at 25.) Brighton also asserts that S&C "cited no evidence on seven of the eight *Sleekcraft* factors" or discuss them. Brighton concludes that "[t]his deficiency alone makes the case 'stand out' from the garden-variety trademark and trade dress case." (*Id.* (quoting *Octane Fitness*, 134 S. Ct. at 1756).) These assertions belie the findings the Court previously made in its order denying attorney's fees and its summary judgment motion. (Doc. No. 86 at 17 (MSJ); Doc. No. 218 at 30–31 (Attorney's Fees).) In the post-trial order, the Court stated:

> As the Court noted in its order granting summary judgment on the trade dress claim, "Plaintiff does not address the Sleekcraft factors by name . . . ." (Doc. No. 86 at 17.) However, the Court's analysis makes clear that Plaintiff's evidence addressed several of the factors. For example, the Court "infer[red] that there is some close proximity of the products—both are in Southern California" (second factor). (Id. at 18.) The Court acknowledged that Plaintiff proffered some evidence of the products' similarity, although the evidence's probative value was weakened by its source (third factor). (Id. at 17–18.) The Court noted "Plaintiff provide[d] extensive information regarding the marketing channels used" (fifth factor). (Id. at 18.) And the Court stated that both parties "provided great detail about how they developed their respective lines and the inspiration for the lines' development" (eighth factor). (Id.) While the analysis was "slim," (id. at 17), and the evidence was ultimately insufficient to withstand Defendant's motion, the Court is not persuaded that

Plaintiff's showing was "completely lacking in merit" to support a fee award, *Secalt* S.A., 668 F.3d at 688.

(Doc. No. 218 at 30–31.) The Court concluded by acknowledging that while Plaintiff failed to provide enough evidence to defeat summary judgment and create a triable issue of material fact, S&C's claim was not so devoid of merit that it would stand out as exceptional.

Even in cases where a plaintiff failed to produce any evidence, the Ninth Circuit has upheld a finding the case was not exceptional and denying attorney's fees because it found the case was not frivolous and raised debatable issues. *Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007). Here, Brighton simply re-raises the same arguments the Court previously disagreed with. The Court finds no reason to change its analysis now with regards to the sufficiency of S&C's case.

### 2. Secondary Meaning

Secondary meaning is "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (citation and internal quotation marks omitted). "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

Brighton argues that S&C "had no evidence whatsoever on key factors relevant to secondary meaning." (Doc. No. 249 at 27.) Supporting this assertion, Brighton notes they "had no survey evidence" and "no evidence that Brighton had intentionally copied Sophia & Chloe's trade dress in order to confuse consumers or trade upon Sophia & Chloe's goodwill." (*Id.* at 27–28.) Again, this is the identical argument that Brighton previously raised. Addressing it, the Court found:

Defendant argues Plaintiff "had no evidence whatsoever on key factors relevant to secondary meaning." (Doc. No. 177-1 at 23.) Defendant points out that Plaintiff had no survey evidence and no evidence that Defendant intentionally copied Plaintiff's trade dress to confuse consumers or trade upon Plaintiff's goodwill. (Id. at 23–25.) While the Court found it notable that Plaintiff failed to offer a consumer survey at summary judgment, the Court rejected Defendant's argument "that this is sufficient to sink Plaintiff's secondary meaning claim[.]" (Doc. No. 86 at 16.) The Court again rejects this argument in light of the Ninth Circuit's admonition that secondary meaning "can be established in many ways, *including (but not limited to)* . . . survey evidence[.]" *Filipino Yellow Pages, Inc.,* 198 F.3d at 1151(emphasis added).

(Doc. No. 218 at 28.) Brighton—again—acknowledges that S&C proffered sales and advertising evidence but asserts this "evidence showed that the amount of Sophia & Chloe's sales and advertising was inadequate *as a matter of law* to prove secondary meaning." (Doc. No. 249 at 28.) Brighton also states that the evidence submitted was undisclosed, an issue duly noted by the Court. (Doc. No. 218 at 29 n.5 ("Defendant has made it abundantly clear that it disputes the accuracy of the Court's finding that Plaintiff's late disclosure of these witnesses was harmless and substantially justified . . . . to the extent Defendant 'respectfully submits the finding is erroneous,' . . . it may take that issue up with the Court of Appeals." (internal citations omitted)).)

Ultimately, the Court concluded again that when the factors are taken together, "the Court cannot conclude that Plaintiff's showing on secondary meaning was so deficient as to make this an exceptional case." (*Id.* at 29.) The Court finds no reason to reverse that analysis now.

### 3. Relaxed Standard for Exceptional Cases

The only substantive change between the Court's previous order and this one is the relaxed standard defining exceptional cases under 15 U.S.C. § 1117. However, Brighton must still prove by a preponderance of the evidence and in light of the totality of the circumstances that the case is exceptional. "The Supreme Court explained that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts

of the case) or the unreasonable manner in which the case was litigated." *SunEarth*, 839 F.3d at 1180.

Under the first prong of *Octane Fitness*, "[t]he Supreme Court explained that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)[.]" *SunEarth*, 839 F.3d at 1180. Brighton's only basis for such a finding boils down to S&C's failure to present enough evidence to defeat its summary judgment motion, such as only providing evidence of confusion from industry insiders, failing to get a consumer confusion survey, and inability to show Brighton intentionally copied S&C's work. (Doc. No. 249 at 24–30.)

Courts have denied attorney's fees in similar situations when a plaintiff's "position . . . was not unreasonably or exceptionally weak" and it "submit[ted] evidence of some actual confusion from customers[.]" *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, No. 3:15-CV-04618-WHO, 2017 WL 6059271, at *6 (N.D. Cal. Dec. 7, 2017) (citing *Reserve Media, Inc. v. Efficient Frontiers, Inc.*, No. 2-15-05072-DDP (AGRx), 2017 WL 2562098, at *1 (C.D. Cal. June 12, 2017)); *see also Caiz v. Roberts*, No. CV1509044RSWLAGRX, 2017 WL 830386, at *5 (C.D. Cal. Mar. 2, 2017) (declining to accept defendants' invitation to find the case exceptional based on a lack of evidence in the absence of an improper motive or "a particular need . . . to advance considerations of compensation and deterrence," and concluding that defendants had failed to meet their burden to show the case was "exceptional" based only on plaintiff's failure of proof or lack of success.)

Under the second prong of *Octane Fitness*, a court may find a case "exceptional" given the "unreasonable manner in which [it] was litigated." *SunEarth*, 839 F.3d at 1180. Again, as discussed throughout this analysis and the Court's previous analyses in the summary judgment order and the order denying attorney's fees, Brighton has failed to show that S&C litigated the case in an unreasonable manner. Although the Court ultimately did not find S&C's evidence persuasive, and was surprised at the lack of a consumer confusion survey at summary judgment, S&C nevertheless set forth good faith arguments in its

defense. Thus, the Court holds here as the Court held in *Caiz,* by stating that "it is difficult for the Court to conclude, as Defendants suggest, that it was frivolous or objectively unreasonable for Plaintiff to pursue this litigation." 2017 WL 830386, at *5. "[W]here a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced exceptionally meritless claims." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812-ODW (Cwx), 2016 WL 5842187, at *3 (C.D. Cal. Oct. 5, 2016) (internal quotation marks and citation omitted).

While the Court acknowledges that the exceptional standard is now relaxed, the Court exercises its discretion in light of the totality of the circumstances and finds that this case is not exceptional warranting attorney's fees. "[M]ere failure of proof on a claim or lack of success in a lawsuit is not sufficient to warrant a finding that a case is exceptional." *Caiz*, 2017 WL 830386, at *5. Thus, the Court **DENIES** Brighton's motion for attorney's fees under the Lanham Act as well.

## IV. NON-TAXABLE COSTS

Brighton requests that the Court award its non-taxable costs, which can be awarded under both the Copyright Act and the Lanham Act. (Doc. No. 249 at 33–34.) The non-taxable costs Brighton seeks are expert witness fees totaling $111,831.11. The test to determine if non-taxable costs should be awarded is the same as attorney's fees under both the Copyright Act and the Lanham Act. Thus, the Court incorporates its analysis as such, and declines granting non-taxable costs.

## V. MOTION TO RE-TAX COSTS

S&C moves the Court to re-tax costs awarded to Brighton. (Doc. No. 256.) The Court Clerk awarded $14,838.78 to Brighton. (Doc. No. 250.)

### A. LEGAL STANDARDS

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, a prevailing party should be awarded costs unless "a federal statute, these rules, or a court order provides otherwise. . . ." This rule "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-*

*American Educators v. California ("AMAE")*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). The losing party bears the burden of making a showing that the award of costs would be inequitable under the circumstances. *Nat'l Info. Servs., Inc. v. TRW, Inc.*, 51 F.3d 1470, 1472 (9th Cir. 1995), overruled on other grounds by *AMAE*, 231 F.3d at 593.

If a district court denies costs, it must "specify reasons," explaining "why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *AMAE*, 231 F.3d at 591–93). Appropriate reasons to deny costs include: (1) the need to punish a prevailing party's misconduct, (2) the losing party's limited financial resources, (3) the degree of economic disparity between the parties, (4) "the chilling effect of imposing such high costs on future civil rights litigants," (5) the closeness and difficulty of the issues raised in the case, and (6) that the losing party litigated in good faith. *AMAE*, 231 F.3d at 592–93.

Alternatively, a district court "need not give affirmative reasons for awarding costs." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). "[I]nstead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Id.*

### B. DISCUSSION

S&C cites to the case being a "close call" as a reason to re-tax costs. (Doc. No. 256 at 2.) S&C argues first, a jury found that Brighton willfully infringed on its patents; second, S&C was awarded a judgment in wrongful profits; and third, the Ninth Circuit panel was divided on the standard to use. (*Id.* at 2–3.) Finally, S&C states it has "extremely limited resources, consisting of only a few thousand dollars in cash." (*Id.* at 3.) Brighton reasserts its arguments used throughout its attorney's fees motion and urges the Court to reject S&C's limited resources argument. (Doc. No. 257 at 2–3.) Here, the arguments submitted by S&C do not overcome the heavy presumption favoring an award of costs. While the Court was more lenient on the burden of financial hardship under the Copyright Act, the standard under that act is more equitable and based on a totality of circumstances. Here,

S&C's declaration does not contain substantial evidence showing financial hardship, only conclusory statements—albeit under penalty of perjury—about S&C's financial status. Thus, the Court declines to re-tax costs and **DENIES** S&C's motion. (Doc. No. 256.)

## VI. CONCLUSION

Underlying Brighton's motion for attorney's fees under both the Copyright Act and the Lanham Act is a fairly and reasonably litigated case. Keeping in line with the principle of the Copyright Act, awarding both parties fees would further its purpose because both parties had legitimate reasons to both prosecute and defend against S&C's copyrights. Under the totality of circumstances though, the Court finds that the balance is at best neutral and at worst tipped in favor of S&C, and thus declines awarding fees. Moreover, the Court finds that even under the Lanham Act's relaxed approach to defining an exceptional case, the Court still finds that this case does not warrant that label. Accordingly, the Court also declines granting fees under the Lanham Act. Thus, Brighton's motion for attorney's fees and non-taxable costs is **DENIED**. (Doc. No. 249.) Finally, S&C's motion to re-tax costs is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 29, 2019

Hon. Anthony J. Battaglia
United States District Judge